UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BILLLIE J. SWEET RAIN SHEEHY, et al.,

                         Petitioners,

                                                              **Hon. Hugh B. Scott**

              v.
                                                                 06CV66A

                                                                 **Report**
                                                                   **&**
MIKE JOHANNS, Secretary of Agriculture,                   **Recommendation**
et al.,

                         Respondents.

_____


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 46).  The instant matters before the Court are (a) petitioners' joint motion for a

preliminary injunction and motion to stay acceleration and foreclosure of their farm loans

(Docket No. 21[1]); (b) petitioners' motion for a preliminary injunction, for an expedited motion

and to seal all documents pertaining to petitioners' motion (Docket No. 24[2]); and (c)

_____

        [1]In support of this motion, petitioners filed their notice of motion, and moving papers to
renew their motion first made in the United States Court of Appeals, Docket No. 21.
        In opposition, respondents submitted their memorandum of law, Docket No. 42.

        [2]In support of this motion, petitioners filed their joint memorandum, Docket No. 25, and
joint affirmation, Docket No. 26.
        In opposition, respondents in effect oppose in their cross-motion for summary judgment,
Docket No. 35, as well as their memorandum in opposition, Docket No. 40; their counsel's
affidavit, Docket No. 41.

respondents' motion for summary judgment on the administrative record (Docket No. 35[3]).  At

issue in all these motions is the acceleration and foreclosure of petitioners' farm loans and, as

such, these motions will be considered together in this Report & Recommendation.  For judicial

economy, certain applications or motions that could be dealt with separately in an Order will be

considered in this Report.

### BACKGROUND

Petitioners (parents Robert and Sandra Sheehy, children Billie J., Bobbi Jo, Patrick John

Sheehy), proceeding pro se, are a farm family that own and run a dairy farm.  Each petitioner

owns cattle that was used to secure farm loans each petitioner entered into with the United States

Department of Agriculture ("USDA").  Respondents are the USDA, Mike Johanns, the Secretary

of that department, the National Appeals Division ("NAD"), an agency of USDA, and the Farm

Service Agency ("FSA"), another agency of USDA.

Petitioners have five outstanding loans with FSA (Docket No. 37, Resp'ts' Statement ¶ 1;

Admin. Record at 229-43; Docket No. 67, Resp'ts' Response to Pet'r Statement ¶¶ 1, 4; see

---

[3]In support of their motion, respondents submitted their memorandum of law, Docket
No. 36; Statement of Facts, Docket No. 37; Notice of Motion, Docket No. 38; attorney's
affidavit, Docket No. 39, and manually filed copy of the administrative record from the United
States Department of Agriculture.  Respondents also filed a reply memorandum, Docket No. 64,
response to petitioners' statement of material facts with exhibit, Docket No. 67, see Docket
No. 63 (attempted filing), and a reply to petitioners' supplemental memorandum, Docket No. 69.
       In opposition, petitioners submitted separate statements from each petitioner, Docket
Nos. 51, 52, 57, each with exhibits; their joint memorandum, Docket No. 56; their joint affidavit
with exhibits, Docket No. 58; supplemental memorandum with exhibits, Docket No. 68, with
manually filed copies of audio tapes; and supplemental reply memorandum with additional
exhibits, Docket No. 70.

Docket No. 57[4], Pet'rs Robert and Sandra Sheehy Statement ¶¶ 1, 4).  The children had 4-H

youth loans (see generally, e.g., Docket No. 51, Billie Sheehy Statement).  By April 2001,

petitioners failed to keep up their loan payments due in January and the FSA began proceedings

to accelerate the loans (Docket No. 37, Resp'ts' Statement ¶ 2).  Petitioners contend, however,

that they did not receive the loan proceeds until December 2000, purchased cattle in

January 2001, and were only required to make a milk check assignment of $100 per month in

January and nothing more was sought by FSA (Docket No. 57, Robert & Sherry Sheehy

Statement ¶¶ 8, 9, 10, 16, 17).  Respondents point to the promissory notes petitioners executed

that required payments of thousands of dollars starting in January 2001 (Docket No. 67, Resp'ts'

Response Statement ¶ 17; see Admin. Record at 229-43), and petitioners were $30,684 in arrears

when the FSA commenced proceedings (Docket No. 36, Resp'ts' Memo. at second unnumbered

page).  The FSA sent petitioners a Notice of the Availability of Loan Servicing and Debt

Settlement Programs for Delinquent Farm Borrowers, pursuant to 7 C.F.R. § 1951.907(c) (id. at

second unnumbered page to page 2; Docket No. 37, Resp'ts' Statement ¶ 3).  Petitioners applied

for primary loan servicing (or "PLS") (Docket No. 37, Resp'ts' Statement ¶ 4) and petitioner

submitted with this application a required "farm and home plan" on July 14, 2001 (id. ¶¶ 6, 7).

The FSA developed a revised farm plan on August 16, 2001 (id. ¶ 8).  The revised plan altered

the appraised value of the farm as stated by petitioners and included debts that petitioners did not

include in their version of the plan (id. ¶¶ 9, 10).  Petitioners did not agree with these revisions

and refused to sign the revised plan, and respondents argue that petitioners did not produce

---

[4]Some of the petitioners submitted individual Statements, Docket Nos. 51 (Billie
Sheehy), 52 (Bobbi Jo Sheehy), 53 (Patrick John Sheehy).

documentation showing that the revisions were incorrect (Docket No. 36, Resp'ts' Memo. at 2

n.2). In August 2001, petitioners' cattle were seized by the Allegany County SPCA; this seizure

is the subject of pending litigation in this Court, see Sheehy v. Wehlage, No. 02CV592. The

FSA processed the revised farm and home plan through its DALR$ computer program to get the

combination of loan service programs that would result in a feasible plan, see 7 C.F.R.

§ 1951.909(a)(1) (id. at 3; Docket No. 37, Resp'ts' Statement ¶ 11), with "feasibility" of the plan

defined in the FSA's regulations, id. §§ 1951.906, 1951.909(d)(2), as petitioners having enough

income after payment of essential living and operating expenses and other non-FSA debts to

make an annual loan payment of at least $33,783 (Docket No. 37, Resp'ts' Statement ¶¶ 12-13;

Admin. Record at 10)[5]. The FSA determined that petitioners were not eligible for primary loan

servicing because the DALR$ computer program could not find a feasible farm and home plan

(Docket No. 37, Respt's' Statement ¶ 14). Petitioners were notified of their right to mediate this

dispute (id. ¶ 16) or to challenge the FSA's appraisal of their farm (id. ¶ 18). Petitioners did not

appeal that appraisal (id. § 20).

On October 12, 2001, the FSA notified petitioners that FSA intended to accelerate the

loans (id. ¶ 21), and notified petitioners of their right to buy out the loans, which they declined to

do (Docket No. 36, Resp'ts' Memo. at 4 & n.3). Petitioners requested a meeting with an FSA

servicing official but listed a number of FSA employees that petitioners were not willing to meet

---

[5]Under these regulations, for a plan to be "feasible" the petitioners' actual income, production and expenses must be considered in order to determine whether the petitioners have sufficient income to pay all operating expenses and taxes, meet scheduled payments of all debts, and meet 100-110% of the amount for farm operating expenses, debt servicing obligations, and family living expenses, 7 C.F.R. § 1951.906. Feasibility is also determined if the Government will recover as much or more than it would through involuntary liquidation or foreclosure, id. § 1951.909(d)(2).

(id. at 4-5).  No meeting was held because petitioners later refused to meet with anyone from

FSA (id. at 5).  The FSA repeated its noticed intention to accelerate the loans in a letter dated

November 15, 2001, with notice of petitioners' right to appeal this decision to the NAD (id.).

Petitioners filed a timely appeal with the NAD (Docket No. 37, Resp'ts' Statement ¶ 27).  The

appeal was suspended until 2004 while petitioners were plaintiffs in a pending class action

against the USDA, Keepseagle v. Veneman No. 99cv03119 (D.D.C.) (Docket No. 36, Resp'ts'

Memo. at 5).  On September 9, 2004, the NAD revived the suspended appeal and a telephone

hearing was held on October 22, 2004, and continued on November 4, 2004, and the parties

submitted additional information (id.).  On December 14, 2004, the NAD hearing officer upheld

the FSA's decision to continue with acceleration of the loans and denial of primary loan

servicing (id. at 6).  The hearing officer determined that the FSA properly calculated milk prices

and concluded that petitioners did not submit evidence to dispute the FSA's appraisal of the

farm.  That officer agreed with the FSA that petitioners could not develop a feasible farm and

home plan and petitioners were ineligible for primary loan servicing.  (Id.)  The hearing officer

found that the loans were at least 90 days in arrears and that the FSA did not err in sending notice

of its intention to continue with acceleration of the loans (id.).

Petitioners filed a letter requesting Director Review of the NAD hearing officer's

decision (Docket No. 37, Resp'ts' Statement ¶ 33).  On March 2, 2005, the Deputy Director of

NAD, on behalf of the Director, upheld the hearing officer's determination (id. ¶ 34).  The

Deputy Director found that petitioners did not establish by a preponderance of the evidence that

the FSA's decision was erroneous.

*Appellate Review of Administrative Order*

On March 29, 2005, petitioners (including then infants Casey and Sherry Sheehy) filed a joint petition for review with the United States Court of Appeals for the Second Circuit (Case No. 05-1591-ag), seeking judicial review of the final administrative appeal decision made by the Deputy Director acting on behalf of the Director of NAD (Docket No. 1). Petitioners in this proceeding sought to reverse the NAD's determination to accelerate their loans and to halt the foreclosure. Petitioners moved for an injunction (Docket No. 6; see Docket No. 11 (petitioners' reply)), which respondents opposed on the grounds of lack of jurisdiction (Docket No. 10). The Second Circuit transferred this proceeding to this Court on November 15, 2005 (Docket Nos. 12, 15, filed January 31, 2006; see Docket No. 5 (motion to transfer)).

*District Court Action*

This Court granted petitioners in forma pauperis status (Docket No. 22; see Docket No. 16). Petitioners, still proceeding pro se, then filed their renewed motion for preliminary injunction and to stay acceleration and foreclosure (Docket No. 21; see Docket No. 6). This Court denied petitioners' request for an "expedited ex parte motion for immediate injunction against respondent and for sealing of all documents" pertaining to this motion (Docket No. 23). Petitioners filed another motion for immediate injunction and for sealing of their moving papers (Docket No. 24). The Court scheduled briefing of both motions to be submitted at the same time and required that the parties advise the Court of any activity toward foreclosure (Docket No. 28). Leave was allowed to serve a single copy of the administrative record upon petitioners (Docket No. 44), and the Court extended time to respond to the pending motions (see Docket Nos. 31

(Order), 30 (respondents' motion), 33, 34 (petitioners' opposing memorandum and affidavit)).

Respondents moved for summary judgment upon that administrative record (Docket No. 35).

Petitioners also moved for appointment of a guardian for two infant petitioners Casey and

Sherry Sheehy (Docket No. 20), which was eventually granted with the condition that legal

counsel be obtained for these infants (Docket No. 47). The Court later dismissed, without

prejudice, the infant Casey and Sherry Sheehy's claims until they reached majority or obtained

legal counsel to represent them (Docket Nos. 61 (Report & Recommendation), 62 (Order

adopting Report); see also Docket Nos. 48, 50, 54, 55, 60 (orders setting status conferences on

infant petitioners and their representation)).

*Pending Motions--Petitioners'*

*First Motion for Injunctive Relief--Enjoin Acceleration and Offsets*

In March 2006, petitioners renewed their appellate court motion (see Docket No. 6) to

enjoin the continued acceleration of their loans and foreclosure actions, as well as Treasury

offsets, contending that these actions have placed them in severe financial hardship (Docket

No. 21). They argued that there is a substantial likelihood of success on the merits, there is a

substantial question for this Court's review, that petitioners suffered and continue to suffer

irreparable harm, and that the injury to petitioners outweighs the harm of a stay upon respondents

(id.).

Respondents state that, upon filing of petitioners' original motion in the Second Circuit

(see Docket No. 6), respondents have ceased all activities triggered by the NAD decision (Docket

No. 42, Resp'ts' Memo. at 2), but reserved the right to use administrative offsets to collect

petitioners' debt (id. at n.1). This Court's subject matter jurisdiction is based upon review of the

NAD decision and not the administrative offsets to collect the underlying debt, since petitioners

never sought administrative review of these offsets (id. at 3; see Docket No. 41, Resp'ts' Atty.

Aff.).   Treasury and administrative offsets are authorized by statute, 31 U.S.C. § 3716(a), and by

USDA regulations, 7 C.F.R. §§ 3.21, 1951.101, upon notice (Docket No. 42, Resp'ts' Memo. at

4-5).   Petitioners here were given notice prior to the offsets and, pursuant thereto, they had thirty

days to appeal the imposition of the offsets, which petitioners failed to do (id. at 5).   Respondents

alternatively argue that petitioners have not established all the elements for injunctive relief and

failed to apply the relevant test for that relief (id. at 3-4).

*Second Motion for Injunctive Relief--Enjoin Interference and Seal Documents*

In April 2006, petitioners filed an "expedited ex parte motion for immediate injunction

against respondents and for sealing of all documents" pertaining to this motion (Docket No. 24).

In particular, petitioners here seek to enjoin respondents and their officers, agents, servants and

employees (namely Douglas Donner from the FSA) from interfering in petitioners' contracts with

other parties and from interfering with their privacy and to enjoin them from conducting video

surveillance of their business associates and persons coming onto petitioners' farm or house (id.).

Petitioners state that, due to respondents' acceleration and foreclosure actions, they have been

forced to put the farm up for sale, but respondents have been interfering with that real estate

transaction, apparently part of the "discrimination, hatred and health endangerments" that

petitioners claim arose from petitioners' participation in the pending Keepseagle litigation (id.

¶ 1).   Donner allegedly threatened an auctioneer hired to liquidate petitioners' farm to prevent the

sale of farm assets, and another FSA employee told the auctioneer not to conduct the sale (id.

¶¶ 2, 3).   Petitioners also claim the Donner influenced the realtor selling the farm and apparently

dissuading the realtor to be present when two potential buyers came to inspect the property (id.
¶ 4).  Petitioners argue that they had made arrangements to create a separate account for money
owed to the USDA (id. ¶ 6).  They complain of a video surveillance by their neighbor which
increased when auctioneers were contacted about liquidating their property (id. ¶ 9), although
they do not allege any connection between the neighbor and respondents and the neighbor is not
named as a respondent in this action.  Petitioners also seek to seal these moving documents "as
the safety and privacy of all parties referred to in this request must be protected" (id. ¶ 14).

    Respondents contend that this motion is not related to the pending review of the NAD
decision and raises a claim (a potential Bivens constitutional tort claim) outside of the pleadings
or agency action that is subject to this Court's present review (Docket No. 40, Resp'ts' Memo. at
2-3).  Since petitioners have not established subject matter jurisdiction for this new tort claim,
their request for injunctive relief should be denied (id. at 3, 5-6).  Respondents point to various
procedural defects in any purported tort claim (such as the absence of waiver of sovereign
immunity under the Federal Tort Claims Act, failure to present the tort claim administratively)
that would preclude finding likelihood of prevailing on the merits (id. at 6-7), and petitioners
have not produced evidence to support their factual allegations (id. at 8-9).  Further, respondents
argue that this Court lacks jurisdiction over petitioners' new constitutional claims because of
sovereign immunity (Docket No. 64, Resp'ts. Reply Memo. at 2).  They deny that they relied
upon Green v. Veneman, 159 F. Supp. 2d 360 (S.D. Miss. 2001), in denying petitioners relief (id.
at 3), and argue that Green is not relevant to this case (id. at 3-4).  Respondents argue that the
decision to deny petitioners relief was not based on bad faith, hence the opinion of the Office of
General Counsel was unnecessary (id. at 4; Docket No. 69, Resp'ts Reply Memo. at 6).  They

state that 7 U.S.C. § 6912(e) expressly requires petitioners to exhaust all administrative remedies,

which they failed to do here (Docket No. 64, Resp'ts. Reply Memo. at 5).  Finally, since

petitioners acknowledge that they are parties in the Keepseagle case, respondents argue that that

case is the proper venue to air discrimination allegations (Docket No. 69, Resp'ts. Reply Memo.

at 7).

*Respondents' Motion for Summary Judgment*

After filing the administrative record[6], respondents move for summary judgment, arguing

that the administrative record amply supports the FSA's decision to accelerate petitioners' loans

(Docket No. 36, Resp'ts' Memo at second unnumbered page, 9-10).  Respondents also seek

denial of petitioners' motions for injunctive relief and dismissal of the claims by the children

petitioners (see Docket No. 69, Resp'ts. Reply Memo. of Law at 2).  Respondents contend that

this record shows that the FSA properly serviced the petitioners' account pursuant to FSA

regulations.  Since petitioners were unable, or unwilling, to develop a feasible plan to refinance

these loans, respondents conclude that the FSA was justified in denying petitioners' eligibility for

primary loan servicing and in accelerating the loans.  (Docket No. 36, Resp'ts Memo. at 9.)

Thus, the final administrative appeal determination by the NAD was supported by substantial

evidence and was not arbitrary or capricious (id. at 9-10).

In response to petitioners' motions, respondents contend that there was sufficient

evidence of petitioners' delinquency to support accelerating the loans and denying their appeal

(Docket No. 64, Resp'ts. Reply Memo. at 6, 8).  The finding that petitioners were behind on their

---

[6]That record includes the decisions of the NAD, agency record, and audio tapes of the
prehearing teleconference and administrative appeal hearing.  Admin. Record.

loans by over $30,000 is supported by substantial evidence (id. at 6; Admin. Record at 168, 228).

Respondents call petitioners' reference to the Sheehy v. Wehlage cattle seizure case irrelevant

and not involving them as parties and any allegations surrounding the cattle seizure is beyond the

scope of the NAD decision under review in this case (Docket No. 64, Resp'ts. Reply Memo. at 6-

7; Docket No. 69, Resp'ts. Reply Memo. at 4-5).

 As for the children petitioners' claims, respondents argue that the alleged seizures by FSA

employees is not relevant to the petition for review, which relates to the five promissory notes

executed by the parents Robert and Sandra Sheehy (Docket No. 64, Resp'ts Reply Memo. at 9;

Admin. Record at 338-47; Docket No. 69, Resp'ts. Reply Memo. at 5-6).  The children failed to

exhaust their own administrative remedies to review the processing of their 4-H loans by FSA

(Docket No. 64, Resp'ts. Reply Memo. at 9).

 Petitioners allege that they were forced to use false information in the DARL$ reports in

order to enter a farm and home plan (Docket No. 56, Pet'rs. Memo. at 3-4; Docket No. 68, Pet'rs.

Reply Memo. at 17-18).  Respondents vehemently deny that the FSA "forced" petitioners to

accept plans with false information (Docket No. 64, Resp'ts. Reply Memo. at 8; Docket No. 69,

Resp'ts. Reply Memo. at 8).  Petitioners contend that they were denied loan servicing and that

respondents illegally seized and sold their cattle and acted in bad faith regarding all of their

loans, including the children's 4-H loans(Docket No. 68, Pet'rs. Reply Memo. at 1).

 In reply to petitioners' argument of bad faith on the part of NAD, respondents contend

that petitioners' statements involve the condition of the cattle prior to their seizure in

August 2001 (Docket No. 69, Resp'ts. Reply Memo. at 3) (the subject of the pending Sheehy v.

Wehlage litigation), and did not provide evidence of any bad faith (id.).

*Briefing Schedule*

Petitioners' motion for expedited hearing of their injunction motion was effectively

denied by the scheduling Orders set forth by this Court.  Responses to the pending motions (or

completing responses already submitted) was due on or before November 15, 2006, with any

reply due on or before January 3, 2007.  The motions were deemed submitted (without oral

argument) as of January 3, 2007.  (Docket No. 61.)

## DISCUSSION

I.      Applicable Standards

A.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c).   The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford,

supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v.

Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477

U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must

demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986), the party against whom summary judgment is sought, however, "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving

party must come forward with specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in

original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002);

Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

      B.      Preliminary Injunction

The parties agree (see Docket No. 25, Pet'rs Memo. at second unnumbered page; Docket

No. 40, Resp'ts' Memo. at 7; Docket No. 42, Resp'ts' Memo. at 3-4) that under Rule 65,

injunctive relief is granted if movants demonstrate irreparable harm in the absence of the

injunction; and either a likelihood of success on the merits or sufficiently serious questions going

to the merits of the case to make them a fair ground for litigation and a balance of hardships

tipping decidedly in movants' favor, see Forest City Daly Hous., Inc. v. Town of N. Hempstead,

175 F.3d 144, 149 (2d Cir. 1999).

      C.      Administrative Appeal

This Court has jurisdiction to review this administrative appeal under 7 U.S.C. § 6999.

At the core of these motions is review of the administrative appeal upholding acceleration of

petitioners' loans and their foreclosure.  Review of the NAD's decision is governed by the

Administrative Procedure Act, 5 U.S.C. §§ 701, 704, 706 (the "APA").  Under the APA, an

agency's decision, including its actions, findings, and conclusions should not be overturned

unless they are "unsupported by substantial evidence" or are "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," id. § 706(2)(A), (E).  Judicial review is

limited to the administrative record, National Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d

Cir. 1997) (Docket No. 69, Resp'ts. Reply Memo. at 2-3).  Under the "arbitrary and capricious"

standard, the Court must determine whether the agency examined the relevant evidence and

articulated a rational connection between the facts found and the decision made, Motor Vehicle

Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The agency's factual

determinations are reviewed on the whole record to determine whether the findings of fact are

supported by "substantial evidence," United States v. International Bhd. of Teamsters, 170 F.3d

136, 143 (2d Cir. 1999).  This "substantial evidence" test is deferential to the agency, id.

Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales,

402 U.S. 389, 401 (1971) (quoting Consolidated  Edison Co. v. National Labor Relations Bd.,

305 U.S. 197, 229 (1938)).  This Court in reviewing the NAD's decision is "confined to the

administrative record compiled by that agency when it made the decision," National Audubon

Soc'y, supra, 132 F.3d at14 (citing Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44

(1985)).  Judicial review is limited to examining that record to determine "whether the decision

was based on a consideration of the relevant factors and whether there has been a clear error of

judgment," Natural Resources Defense Council v. Muszynski, 268 F.3d 91, 97 (2d Cir. 2001)

(quoting City of N.Y. v. Shalala, 34 F.3d 1161, 1167 (2d Cir. 1994)), with deference to the

presumed valid actions of the agency, Sierra Club v. U.S. Army Corps of Engineers, 772 F.2d

1043, 1051-54 (2d Cir. 1985).  Finally, the Court cannot substitute its policy judgment for that of

the agency, Bellevue Hosp. Center v. Leavitt, 443 F.3d 163, 174 (2d Cir. 2006).

II.     Application

    A.     Sealing Petitioners' Motion

Petitioners only generally argue that the personal safety and privacy of parties named in their motion would be protected if filed under seal (see Docket No. 25, Pet'rs Memo. at sixth unnumbered page).  Petitioners have not shown how anyone named in their moving papers is in danger to justify sealing them.

Filings in this case ultimately are downloaded into the Court's Electronic Case Filing system ("ECF").  Under the administrative guidelines for the ECF system and the E-Government Act of 2002, Pub. L. No. 107-347, certain identifying facts need to be redacted prior to electronic filing for privacy purposes, W.D.N.Y. Admin. Proc. for ECF, 2.m.i.(2), (3), (4) (June 2004) (redact financial account numbers, Social Security numbers, exact dates of birth).  Petitioners are proceeding pro se and as such are not electronically filing their submissions themselves; rather, the Court Clerk's office is scanning their paper submissions into the ECF system, see id. 2.o.(4). The Court Clerk does not redact data for parties.  But the redaction requirement applies to all parties and their papers "whether filed electronically or on paper," id. 2.m.i.; hence petitioners had the responsibility of ensuring that redacted versions of their documents were filed for ultimate scanning into the ECF system as well as moving to file under seal the unredacted versions of these documents.  Instead, petitioners filed the unredacted version of these moving papers without providing the redacted version for electronically accessible filing or identifying which documents should have been filed under seal.

Absent a more persuasive argument why these documents should be sealed, petitioners' motion to seal is **denied**.

B.      Injunctive Relief

Petitioners fail to establish the elements for injunctive relief, although respondents have

voluntarily restrained acceleration and foreclosure activities pending resolution of this case.  As

for offsets, petitioners have not established that they would likely prevail on the merits or

explained their failure to exhaust their administrative remedies as to this collection device (as

separate from the acceleration of these loans or a foreclosure).

As for enjoining interference with petitioners' contracts and surveillance of their property,

even if these occurred, an injunction against them is beyond the scope of this proceeding.  At

issue in this case is the legality of an administrative agency denying an appeal.  It does not

involve possible ancillary activities that resulted from that denial.  Additionally, petitioners do

not name as parties the individual FSA employees or officials who allegedly impeded petitioners'

contracts with realtors or the petitioners' spying neighbors (assuming a federal claim can be

alleged against them) in order to enjoin them.  If an injunction were issued, it would be imposed

against parties that could not act under the injunction.

Thus, petitioners' motions for injunctive relief (Docket Nos. 21, 24) should be **denied**.

C.      Administrative Review

Petitioners here have submitted an extensive amount of documents and other materials[7],

some of which were part of the administrative appeal before the NAD and others that were not.

Some of the documents involve the seizure of their cattle that is under consideration in another,

pending action, Sheehy v. Wehlage, others involve the alleged harassment by the FSA. Some

---

[7]Also attached as Exhibit F to Docket No. 68 is an audio tape petitioners claim are
recordings showing denied contracts due to the FSA, Docket No. 68, Pet'rs. Reply Memo. at 8,
Ex. F, taped messages of third parties to petitioners.

involve allegations of racial discrimination against the FSA and NAD, now cast in terms of

NAD's alleged prejudice against petitioners as Native Americans (see generally Docket No. 70).

Petitioners seek discovery to flesh out the "'background' information" (Docket No. 68, Pet'rs.

Reply Memo. at 2), contending that the "record" would include "everything in FSA, USDA, and

NAD's possession, accessibility, and control relative to the Sheehys on August 22, 2001 and

during the NAD hearings" (id. at 3). All of these items are beyond the scope of this action,

which is to review the legality of the NAD's decision to deny petitioners' appeal from the

decision to accelerate their loans. Petitioners are partially correct about the scope of the

administrative record, in that it should include (as it does here) materials FSA and NAD had

during the NAD hearings. Petitioners intention to expand that record beyond that (without

seeking to expand the record either administratively or by motion to this Court) is not permitted.

This Court is restricted to the administrative record before the NAD, and the questions

before the Court are whether the record supports the finding that the FSA properly accelerated

repayment of these farm loans. The FSA offered essentially to refinance petitioners' loans, on

the condition that an appropriate farm and home plan could be adopted. Petitioners did not

appeal the appraisal that lead to the unfavorable farm and home plan that ultimately was rejected

by the FSA. Petitioners were given opportunities to appeal that appraisal or meet with the FSA

to review the situation but petitioners either declined that administrative relief or set so many

preconditions that meetings were never held. The NAD, in fact, delayed review of petitioners'

FSA acceleration action while the Keepseagle class action was pending and upon learning that

petitioners were Keepseagle class members (Admin. Record at 119-20, 118; Docket No. 37,

Resp'ts. Statement ¶ 28); if respondents wanted to discriminate against petitioners they could have easily proceeded before the NAD despite the pending class action.

Petitioners did not participate in the farm and home plan process, instead now argue that the farm and home plan was based upon false information and figures. As to the administrative record, petitioners only contend that they were compelled to use false figures in the farm and home plan, hence summary judgment should be denied to respondents (see Docket No. 68, Pet'rs. Reply Memo. at 17). First, petitioners did not afford themselves the opportunities to meet with FSA staff to review the plan and submit their own figures. Second, petitioners do not indicate how these figures were false. Their arguments are based upon the impact of the seizure of their cattle in August 2001 hindering their projected revenue (see, e.g., id. at 16-17). But petitioners were delinquent on their loans by April 2001, before the seizure.

The five promissory notes (Admin. Record at 229-43) were entered into by parent petitioners Robert and Sandra Sheehy and, as indicated by respondents (see Docket No. 69, Resp'ts. Reply Memo. at 5-6) did not involve the 4-H loans of the children petitioners. Thus, the children's claims should be **dismissed**.

It is understandable for petitioners to muddle the acceleration of their farm loans (at issue in this case) with the later seizure of their cattle (at issue in Sheehy v. Wehlage) that would provide the means to repay the loans. But the issue in this action is whether the administrative procedures were properly followed in authorizing acceleration of the loans. On the administrative record presented herein, petitioners fail to establish that there was not substantial evidence to support the NAD's decision or that decision was arbitrary or capricious.

As a result, respondents' motion for summary judgment on this administrative record

(Docket No. 35) should be **granted**.

## CONCLUSION

Based upon the above, it is recommended that petitioners' motions for preliminary

injunction and related relief (Docket Nos. 21, 24) be **denied** and respondents' cross-motion for

summary judgment on the administrative record (Docket No. 35) be **granted**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk**

**of this Court within ten (10) days after receipt of a copy of this Report & Recommendation**

**in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil**

**Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v.

Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak

v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case

law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale

Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3),

"written objections shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may**

**result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       January 11, 2007